IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JAMES MANDERA                                                                                   PLAINTIFF

V.                                     CASE NO. 3:15-CV-00379 JTK

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION                                                                                DEFENDANT

**ORDER**

**I. Introduction:**

Plaintiff, James Mandera, applied for disability benefits on August 5, 2012, alleging a disability onset date of November 8, 2011. (Tr. at 14). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 24). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Mandera has requested judicial review.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

**II. The Commissioner's Decision:**

The ALJ found that Mandera had not engaged in substantial gainful activity since the onset date of November 8, 2011. (Tr. at 16). The ALJ found at Step Two that Mandera had the following severe impairments: right shoulder internal derangement post repair, status-post right shoulder arthroscopy, bipolar disorder, and anxiety disorder. *Id.* At Step Three, the ALJ determined that Mandera's impairments did not meet or equal a listed impairment. *Id.* Before proceeding to Step

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

Four, the ALJ determined that Mandera had the residual functional capacity ("RFC") to perform light work with the following restrictions: 1) only occasional stooping, crouching, crawling, and kneeling; 2) only occasional overhead reaching bilaterally; 3) work where interpersonal contact is limited to little interaction, such as answering simple questions and responding appropriately to supervisors and co-workers; 4) interaction with the public is infrequent and not considered to be an essential job duty; 5) complexity of tasks can be learned by demonstration or repetition within 30 days, with few variables and little judgment; and 6) supervision required is simple, direct, and concrete. (Tr. at 18).  Next, the ALJ found that Mandera is not capable of performing past relevant work. (Tr. at 22).  At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Mandera's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform at the light level, specifically, small products assembler and machine feeder. (Tr. at 23).   Based on that Step Five determination, the ALJ held that Mandera was not disabled.  *Id.*

**III.  Discussion:**

    A.  Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).  "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).  In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted).  The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the

2

opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B.  Mandera's Arguments on Appeal

Mandera argues that substantial evidence does not support the ALJ's decision to deny benefits.  He contends that: 1) the ALJ failed to resolve in his written decision a possible conflict between the VE's testimony and the DOT; and 2) the RFC assessment failed to fully incorporate Mandera's mental impairments.  For the following reasons, the Court finds that the ALJ's decision is not supported by substantial evidence.

Mandera injured his right shoulder on the job at Utility Trailer in early 2011 and sought treatment consistently thereafter.  (Tr. 333-36).  He underwent nine physical therapy treatments for shoulder pain in April and May 2011.  (Tr. at 350, 363-74).  He treated with Lortab for shoulder pain after an April 28, 2011 trip to the ER. (Tr. at 297-301).  An MRI performed on May 9, 2011 showed possible intrasubstance tear.  (Tr. at 351).

On June 14, 2011, Mandera began seeing Dr. Rob Schechter, M.D., an orthopedist, for evaluation of his shoulder injury. (Tr. at 333-336).  Mandera reported that he had continued to work at his full duty job in spite of pain, and that he asked for modifications when necessary; however, his supervisor was not sympathetic to his pain. (Tr. at 333).  Dr. Schechter found shoulder pain and limited ROM which was exacerbated by activity. He diagnosed Mandera with pain in shoulder joint, rotator cuff syndrome, calcifying tendinitis in the shoulder, and bicipital tenosynovitis. (Tr. at 335). He gave Mandera a steroid injection, and limited him to light duty work.  (Tr. at 336).

On June 15, 2011, Mandera saw Dr. Jackie White, M.D., his PCP, for headache and vomiting, which he linked to the steroid injection.  (Tr. at 393).  She prescribed Phenergan.  *Id.*

On June 28, 2011, Mandera had a follow-up appointment with Dr. Schecter. He reported that treatment was not working: he was no better after the previous steroid injection, physical therapy, and pain medication. (Tr. at 329-332). Dr. Schechter noted the poor response to treatment and suggested shoulder surgery. On June 29, 2011, Dr. Schechter performed right shoulder arthroscopic surgery with tendon release, debridement, and subacromial decompression. (Tr. 342-349).

Follow-up x-rays of the right shoulder were normal, with no acute displaced fracture or dislocation. (Tr. at 321).

On July 7, 2011, Mandera saw Dr. Schechter and seemed to be doing fine. (Tr. at 386). He ordered physical therapy and strength training at eight weeks out. *Id.* Mandera underwent physical therapy from July 12, 2011 through September 7, 2011. During the therapy, he complained of pain and decreased ROM. (Tr. at 303-320).

On August 11, 2011, Mandera returned to Dr. Schechter earlier than expected, because he had been put back on full duty work in spite of the light restriction, which included no use of his right arm. (Tr. at 387-389). He was having radiating pain and heard popping sounds in his shoulder as a result or the full duty work. (Tr. at 387). Dr. Schechter said that he should not have returned to full duty work, but Mandera said when he voiced concerns about this to employer he was sent home from work. (Tr. at 388). Dr. Schechter noted that the employer was seriously complicating Mandera's recovery, and that if Mandera could not work within the restrictions at his job, he needed to be off work for six weeks. *Id.*

On September 8, 2011, Mandera saw Dr. Schechter and reported that he was "doing terrible," with pain worse than before physical therapy, even with less motion. (Tr. at 390-391). Dr.

Schechter noted palpable popping sensations in his shoulder. *Id.* Dr. Schechter told Mandera that he could do nothing further short of a second surgery, and that Mandera should see a shoulder specialist. Dr. Schechter prescribed more pain medication. (Tr. at 390).

On October 18, 2011, Mandera followed Dr. Schechter's advice and saw Dr. Charles Pearce, M.D., at Arkansas Specialty Orthopedics. (Tr. at 421-423). Dr. Pearce noted limited ROM and pain in the right shoulder, and he diagnosed right shoulder pain with ongoing labral pathology. (Tr. at 421). He restricted Mandera to left arm only duty, ordered an MRI arthrogram, and prescribed Celebrex. *Id.*

Mandera returned on November 29, 2011. The MRI arthrogram showed no significant soft tissue pathology. (Tr. at 424) Dr. Pearce continued the restriction to left arm only duty and ordered a functional capacity evaluation. *Id.*

On December 28, 2011, Mandera was seen by Nathan Haralson, a certified disability analyst, for a functional capacity evaluation. (Tr. at 402-420). The evaluation revealed that Mandera can occasionally lift 60 pounds with his left arm, can lift up to 15 pounds with his right, can perform intermediate reaching frequently, and *cannot perform overhead reaching* or reaching with more than 5 pounds. (Tr. at 403). He had limited ROM in the shoulder and complained of pain during the 4-hour test. (TR. at 420).

On January 5, 2012, Dr. Pearce indicated that Mandera had reached maximum medical improvement and assigned a 6% permanent partial impairment rating to the right upper extremity and a 4% impairment rating to the whole person. (Tr. at 426). Dr. Pearce returned Mandera to medium work. *Id.*

At the hearing on December 18, 2013, Mandera testified to shoulder pain, and said that he

tried to help his wife out around the house but was limited due to his shoulder impairment. (Tr. at 36-38). He said he could no longer hunt or fish because he cannot lift his right arm up "hardly at all." (Tr. at 45). He said he could lift no more than 5 pounds. (Tr. at 38). He was not taking pain medication at the time. (Tr. at 37).

The first argument Mandera makes hinges on the limitation by the ALJ to only *occasional* overhead reaching bilaterally in the hypothetical posed to the VE at the hearing. When asked if there were jobs in the national economy that a person of Mandera's age, education, work experience, and residual functional capacity could perform, the VE named the jobs of small products assembler (DOT 739.687-030) and machine feeder (DOT 692.686-010). *See Dictionary of Occupational Titles* ("DOT"), U.S. Dept. of Labor (4th ed. 1991); (Tr. at 51). According to the DOT, the small products assembler job requires *constant* reaching, and the machine feeder job requires *frequent* reaching. Both jobs appear to have functional requirements that exceed the RFC limitation to only *occasional* overhead reaching. Mandera argues that the ALJ failed to resolve this conflict.

The VE testified that based on his job analysis, overhead reaching is not part of the small product assembler job. (Tr. at 51). He did not comment in any way on the machine feeder job requirements with respect to overhead reaching. The VE did not expand on his analysis of the overhead reaching component of the product assembler job, or offer specific reasons, examples, or secondary source support for his determination that it did not require overhead reaching. The ALJ did not question the VE about his analysis, ask if the VE's testimony was consistent with the DOT, or discuss in his written decision the apparent conflict.

Under Social Security Ruling 00-4p (2000), the ALJ has an affirmative duty to "identify and obtain a reasonable explanation for any conflicts between [VE] evidence and information in the

DOT, including its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupations Titles* ("SCO")." SSR 00-4p, 2000 SSR LEXIS 8, *1 (Dec. 4, 2000). SSR 00-4p continues:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p, *4.

Where there is an unresolved conflict between the VE's testimony and the DOT, as in this case, the ALJ is required to investigate and resolve that conflict. In an Eighth Circuit case where the RFC limited the claimant to *occasional* overhead reaching bilaterally, and the VE identified jobs that required *frequent* reaching according to the DOT, the ALJ erred by not resolving that conflict. *Moore v. Colvin*, 769 F.3d, 987, 989-90 (8th Cir. 2014). The ALJ in *Moore* did ask if the VE's testimony was consistent with the DOT and the VE answered "yes." *Id*. Without further investigation by the ALJ in *Moore*, that inquiry alone did not meet the SSR 00-4p requirement. *Id.*

In this case, the ALJ did not even make the inquiry on the record about any apparent conflict. When the VE said that based upon his job analysis the small products assembler job did not require

overhead reaching, the ALJ failed to question the VE further. Moreover, neither the VE nor the ALJ commented about the reaching requirement in the machine feeder job. The Eighth Circuit recently held that in the face of an apparent conflict, an ALJ who "posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job descriptions, and explained his decision to credit the VE's testimony," the ALJ had complied with SSR-04p. *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014). *Welsh* outlines the duty required of the ALJ, which is consistent with SSR 00-4p: "the adjudicator will explain in the determination or decision how he or she resolved [a] conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified." SSR 00-4p, *9. Here, Mandera points out that the ALJ did not discuss the apparent conflict in his written opinion. That omission compounds the ALJ's failure to investigate the conflict at the hearing. As a result, the ALJ's decision is not supported by substantial evidence.

The medical evidence here suggests that Mandera also suffers from significant mental limitations associated with bipolar disorder, anxiety, and depression. Mandera contends that the ALJ did not fully incorporate the scope of mental limitations in the RFC, and that the ALJ erred in his conclusion that Mandera could control his mental conditions if he remained compliant with treatment. The Court need not reach these issues as remand is required on the grounds set forth in Mandera's DOT argument above.

**IV. Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to resolve the apparent conflict between the VE's testimony and the DOT with respect to the limitation to occasional overhead reaching. The decision is hereby

reversed and the case remanded with instructions for further review.

      IT IS SO ORDERED this 3rd day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE